■ COLONIAL INDEMNITY INSURANCE COMPANY, as Subrogee of PATSY SALA, et al., Appellants-Respondents, v NYNEX, Doing Business as NEW YORK TELEPHONE COMPANY, Respondent-Appellant. [688 NYS2d 744] —Carpinello, J. Cross appeals from a judgment of the Supreme Court (Cobb, J.), entered January 6, 1998 in Greene County, which partially granted defendant's motion for summary judgment and denied plaintiffs' cross motion for summary judgment.

On September 8, 1994, the Landmark Restaurant in Greene County was destroyed by fire. Plaintiffs, Colonial Indemnity Insurance Company and Midrox Insurance Company, are the respective subrogees of the owners of the building (Pasquale Sala and Maria Sala) and the lessee of the restaurant (Route 23 Corporation). When the Salas purchased the property in October 1972, a wooden telephone booth containing a pay telephone and coin box was already present in the restaurant. The record does not indicate the precise date the booth and phone had been installed; it is undisputed, however, that they were in fact installed by New York Telephone Company. It is further undisputed that the phone and coin box were removed by New York Telephone Company service technician Todd Delisio on February 7, 1992. The wooden booth, however, remained in the restaurant because the Salas would not cooperate in its removal.

Claiming that the fire was caused by the defective condition of "the telephone and/or telephone booth", plaintiffs commenced this action against defendant sounding in negligence, breach of warranties and strict products liability. Following defendant's motion for summary judgment dismissing the complaint and plaintiffs' cross motion for partial summary judgment on their negligence cause of action, Supreme Court dismissed the negligence and warranty claims, but found that questions of fact precluded dismissal of the strict products liability cause of action. These cross appeals ensued.

The cause and origin of this fire are seriously disputed and

in fact may never be resolved since subsequent to the fire some-one intentionally dismantled the circuit breaker box on the premises and removed all of the breakers. When defendant moved for summary judgment on May 15, 1997, it relied upon a March 14, 1995 letter from Colonial Indemnity's claims adjuster which purported to set forth plaintiffs' theory as to the cause of the fire. This letter indicated that the *placement* of excess wire from the booth's roof fan in the ceiling resulted in degradation of the wire's insulation due to constant exposure to adjacent hot and cold water lines, ultimately leading to a high resistance short and the fire. As a result, defendant expended considerable effort in its motion papers to establish that it did not provide the electrical wiring for phone booths of this type and thus did not cause or create "the allegedly defective wiring condition" that caused the fire. To this end, defendant submitted documentary and testimonial evidence establishing that the booth in question was a wooden booth manufactured and activated in the early 1960s which came equipped with a standard 64-inch three-conductor rubber-covered cord providing 110 volt AC power to the booth from a wall receptacle intended to be provided by the customer.

After defendant served its motion, plaintiffs served amended answers to interrogatories and cross-moved for summary judgment, changing somewhat their theory of liability. Through two expert witnesses, plaintiffs asserted that the fire originated at the top of the booth and that its sole cause was the electrical cable providing power to the booth. Specifically, it was opined that the power *cable itself* (as opposed to the manner of placement) was defective because its insulation was inadequate and had degraded, it was not designed to be used as a power cord and it was not designed to be annexed to a three-pronged male attachment plug. Notably, the offending power cable was precisely defined by plaintiffs to be a 12-foot long "American Wire Gauge—#14 Solid Copper NM Cable".

For the purpose of proving its entitlement to summary judgment on the strict products liability claim, defendant accepted plaintiffs' altered theory as true. In so doing, it claimed that it was nonetheless entitled to summary judgment because there was a material alteration to the booth subsequent to its being manufactured—i.e., its standard rubber cord was replaced with heavy duty, solid copper cable—and that this alteration was the proximate cause of the fire. Supreme Court rejected this contention finding lack of record proof "as to the condition of the booth when it was originally delivered to the subject premises". While it is true that defendant could not establish

the condition of the booth when delivered to the restaurant, our review of the record indicates that the strict products liability claim should nevertheless be dismissed.

A manufacturer cannot be held liable in negligence or strict products liability "where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of the plaintiff[s'] injuries" (*Robinson v Reed-Prentice Div. of Package Mach. Co.*, 49 NY2d 471, 475). Notably, Delisio averred that when he removed the phone and coin box on February 7, 1992, he observed that it was equipped with a standard rubber insulated power cord which terminated in a grounded, three-prong receptacle plug.* Other than conjecturing about Delisio's credibility and arguing that his affidavit should be disregarded, plaintiffs failed to raise a genuine issue of fact on this point. To this end, we note that it is not the court's function on a summary judgment motion to assess credibility unless untruths are clearly apparent (*see, Glick & Dolleck v Tri-Pac Export Corp.*, 22 NY2d 439, 441).

Thus, given the unrefuted evidence that a standard rubber cord, and not the offending solid copper cable, was on the booth when Delisio removed the phone and coin box in 1992, it was at some point in time thereafter that the wiring to the booth was substantially modified with the installation of the purportedly degrading, heavy-duty solid copper cable. With documentary and testimonial proof that it did not service this particular booth *or* engage in any electrical wiring of its booths, defendant sufficiently established that *it* was not responsible for the modification. This showing also went unrefuted. Although the Salas both averred that they never modified the booth or directed their employees to do so, this does not satisfactorily rebut defendant's showing that it was not responsible for replacing the cord. Moreover, we note that plaintiffs leased the restaurant to Nicholas Patestas as of May 15, 1993. Noticeably absent from the record is an affidavit from Patestas averring that neither he nor anyone under his control ever altered the booth's wiring. The record does reveal, however, that $14,585 worth of electrical work was completed in May 1993 in connection with Patestas' extensive reconstruction and renovation of the restaurant.

The parties' remaining contentions are either academic or unpersuasive.

---

* We find it significant that Delisio's description of the booth's power cord was attested to *before* defendant was even aware that plaintiffs' experts would alter their theory of liability and opine that a 12-foot solid copper cable was found on the booth after the fire.

Cardona, P. J., Peters, Spain and Graffeo, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as denied that portion of defendant's motion for summary judgment seeking dismissal of the strict products liability cause of action; motion granted to that extent and defendant is awarded partial summary judgment dismissing said cause of action; and, as so modified, affirmed.